## Lorton's Administrator v. Cincinnati, New Orleans & Texas Pacific Railway Company, et al.

(Decided April 16, 1914.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

Railroads—Duty Owing to Trespasser on Track.—The only duty that a railroad company owes to a trespasser on its track is to exercise ordinary care to avoid injury to him after his peril is discovered.

O. M. ROGERS for appellant.

GALVIN & GALVIN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

John Lorton, while walking on the track of the appellee company, was struck and killed by one of its trains. In this suit by the administrator to recover damages for the death of his intestate there was a directed verdict in favor of the appellee company, and the correctness of this ruling of the trial court is the only question we are called upon to review.

It is conceded that Lorton was a trespasser, and the only ground of negligence charged or relied upon is

that his peril was discovered by the trainmen in time to avoid striking him. At the place where he was struck and killed the company had a double track railroad. On one track northbound trains ran, and on the other southbound trains. On the occasion in question Lorton was walking south on the northbound track on which a passenger train was coming toward him. The engineer of the passenger train, seeing Lorton on the track walking toward the train, became apprehensive that he did not appreciate the danger he was in and sounded the alarm whistle. When the whistle was sounded, Lorton went from the north track to the southbound track, and almost immediately after he stepped on this track he was struck by an engine going south on the southbound track.

The only persons in the engine that struck him were the fireman and engineer. The engineer did not see him at all before he was struck, as Lorton stepped on the track on the fireman's side of the engine. The fireman testifies that he did not see Lorton until the engine was within ten or twelve feet of him, and he at once notified the engineer, who immediately applied the brakes and stopped the train after it had run a short distance.

The engineer of the passenger train said that "when I saw the man on the track I blew the whistle. He raised his head up and stepped off the track towards the other main track. I never did know whether he got on or not. We went on about our business. Seems like he had not hardly stepped off the track before there was a work train coming around the curve going south. That was the last I knowed of it until we got to Cincinnati. I think I was in two or three car lengths of him when he stepped off the track."

A passenger who was seated in the rear coach of the passenger train said he was looking out the window and saw a man "walking along going south. He had a basket on his arm; had a gray suit; and about three seconds later an engine and caboose passed the window. I looked out and just as I looked out I saw the man whirled to the side, he was hit."

Reed, another passenger on the train, gave substantially the same evidence.

During his examination as a witness for the plaintiff the fireman was asked if when he walked back to where the body of Lorton was lying immediately after the train stopped he did not say in the presence of some parties who were there that "I saw the man when he

stepped out of the way of the commuter, or northbound train, and told the engineer two times to stop his train or he would strike a man, and if he had listened to me or obeyed my notice the man would not have been struck or injured?'' To this question he answered ''no.''

After this Russell Collins was called as a witness, and after testifying that he was on the train that struck Lorton and was one of the first persons to get to him after the train stopped, he was asked if he heard the fireman, Steers, make a statement when he same back to where Lorton was lying, and he answered, ''I don't know whether he made any statement of seeing the man but he said he told the engineer twice he was going to hit the man; that is the only statement I heard him make. Q. Do you recall whether he made any statement about seeing the man when he stepped out of the way of the commuter, or a statement of similar import? A. No sir; no statement of that kind. The only thing he made a statement of he said he told the engineer twice he was going to hit the man. Q. Did he make any statement to you about where he first saw the man? A. No sir. Q. I will ask you to state to the jury whether the fireman at the time of this accident made any statement about when he first saw this man on that morning? A. He just made the remark, he said he seen him step over and told the engineer twice he was going to hit the man. That's the remark he made when he came back down where he was.''

Keeping in mind that the company did not owe deceased any duty except to exercise ordinary care to prevent injury to him after his peril was discovered, it is very clear that the trial court correctly ruled that the evidence we have related was not sufficient to take the case to the jury. There was no evidence whatever, either direct or circumstantial, from which it could be reasonably inferred that the danger of the deceased was discovered or brought to the notice of the engineer in time to avoid the injury to him.

If it should be assumed that the statement made by the fireman was competent as a part of the res gestae, a question which we do not find it necessary to decide, it does not tend to show that the engineer knew of the presence of Lorton in time to have avoided striking him. It is quite evident that the deceased came upon the southbound track unconscious of the presence of the train upon that track, and that he had barely gotten on the track when he was struck.

The judgment affirmed.